UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

VVQ LAND HOLDINGS, LLC, a Michigan
Limited liability corporation, and
THOMAS J. MOYLE, JR., INCORPORATED,
d/b/a VALLEY VIEW QUARRY, a Michigan
Corporation,

       Plaintiffs,

                                        Case No. 2:11-cv-213

v.                                         HON. R ALLAN EDGAR

THE CHARTER TOWNSHIP OF PORTAGE,
a Michigan Municipal Corporation,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

       This matter is before the Court on Plaintiffs' Motion for Temporary Restraining Order, or in the Alternative, Show Cause Order and Request for Preliminary Injunction (Docket #3) (hereinafter "Plaintiffs' Motion"). Defendant has filed an Amended Brief Opposing Plaintiffs' Motion for a TRO or Preliminary Injunction (Docket #13) (hereinafter "Defendant's Opposition"). Plaintiffs filed a reply (Docket #14) and oral argument was heard on July 8, 2011.

       Plaintiffs VVQ Land Holdings, LLC (VVQ) and Thomas J. Moyle, Jr. ("Moyle), own and operate eight parcels of contiguous property in Sections 10 and 15 of Portage Township, Houghton County, Michigan, having used the above property for mining, aggregate, and gravel operations. (Plaintiffs' Motion, Docket #3, at 2). In a case involving Plaintiffs and Defendant in the Houghton County Circuit Court, the Michigan court found that it is undisputed that prior to

Plaintiffs' purchase of the two parcels, the Portage Township Board zoned the two parcels for rural-residential development, which did not provide for gravel or mineral extraction. (Plaintiffs' Motion, Docket #5-3, Exhibit #12, at 9). According to Defendant, Plaintiffs' rock crushing operation in Section 15 began in 2006 on a part-time basis and continued to expand to the point where the blasting and crushing of rock was occurring on a full-time basis by 2009. (Defendant's Opposition, Docket #13, at 3-4). The record shows that on July 30, 2007, Plaintiffs corresponded with then-Township Supervisor Bill Bingham, requesting a temporary, one-time, zoning variance to allow a single, portable asphalt plant in the north pit. (Plaintiffs' Motion, Docket #4-2, Exhibit #6, at 1). On August 1, 2007, Charter Township of Portage granted the request for the period from August 15, 2007 through November 14, 2007. *Id*. at 2. On December 3, 2009, at the Charter Township of Portage Planning Commission Public Hearing, the Planning Commission opened the hearing to comments "regarding establishing special use permit provisions for the removal and processing of sand and gravel operations in areas zoned Rural Residential." (Plaintiffs' Motion, Docket #4-5, Exhibit #9, at 2). The Commission noted that:

> Moyle initially moved a gravel operation from a manufacturing zone to an area across the road which was zoned Rural Residential. Neighbors have been adversely affected by noise and dust and some have observed deterioration of water in watershed areas downstream from the quarry operation. The subcommittee met with concerned residents and Moyle and had a number of meetings to address the issue. One of the Portage Township attorneys gave opinions that efforts to shut down the operation would likely not be successful because of current laws in the state favoring the mining and extraction of valuable minerals. These laws have long history because of the extensive mining activities in the state.
>
> Members of the audience contributed their own experiences with the quarry activities and their interaction with Valley View Quarry Company. Concerns and experiences with water quality,

> air quality and noise were expressed over the operation of the Valley View Quarry.
>
> The Planning Commission examined correspondence pertaining to the legal aspects of special use permits for quarry activities in rural residential areas.
>
> John Ollila noted that valuable materials probably lie along a ridge running through the current location for gravel extraction. It will probably be in the interest of Portage Township to determine and map the location of these deposits. It may be that a new quarry mining zone will need to be established.
>
> Members of the audience passed around pictures of the consequences of the current quarry mining operation on water areas where drainage has occurred.
>
> Members of the audience observed that when the property was purchased, it was scheduled for residential development. But, then the quarry operation was started and has been expanded over the last several years.

*Id*. at 2-3. The Commission decided to defer the action on the special use provisions until Bingham could secure more information. *Id*. at 3.

Plaintiffs allege that Bingham, Defendant's former Township Supervisor and Zoning Administrator, expressly allowed Plaintiffs' use and made efforts to reach "Points of Consensus" between Plaintiffs and Charter Township of Portage Planning Committee, under which Plaintiffs would continue the mining operation. Plaintiffs agreed to apply for a special use permit and take steps to alleviate residents' concerns. (Plaintiffs' Motion, Docket #3, at 3-4). The Michigan court found that "although there was no evidence that former Supervisor Bingham ever gave Moyle formal approval, in the sense of issuing a zoning permit, his efforts to ameliorate problems may have given the impression, at least, of condoning Moyle's industrial quarry in violation of zoning." (Plaintiffs' Motion, Docket #5-3, Exhibit #12, at 10). According to Plaintiffs, after they reached "Points of Consensus" with the Township Board, the Board then requested the Planning Commission to

recommend required amendments to the Zoning Ordinance, which would pertain to Plaintiffs' special use. (Plaintiffs' Motion, Docket #3, at 13). The Township Planning Commission submitted the amendment to the County Planning Commission and, upon approval, then to the Township Board for consideration in May 2010. *Id*. However, rather than take up the issue at its May 2010 meeting, the Board "tabled" the special use provision and decided to wait for the outcome of a case pending before the Michigan Supreme Court, *Kyser v. Kasson Township*, 486 Mich. 522 (2010). (Plaintiffs' Motion, Docket #3, at 13). On July 15, 2010, the Michigan Supreme Court overruled the "no very serious consequences" rule. *Kyser*, 486 Mich. at 543-544 (overruling *Silva v. Ada Township*, 416 Mich. 153 (1982)). (Plaintiffs' Motion, Docket #3, at 13). On August 25, 2010, the Township Board held a special meeting and voted to shut down VVQ operations. *Id*. at 14.

On September 17, 2010, Portage Township filed a complaint in Houghton County Circuit Court against VVQ and Moyle seeking injunctive relief and abatement of a nuisance per se. In that lawsuit, the Township sought a court order prohibiting VVQ and Moyle from using their property for purposes in violation of the zoning ordinance, especially mining and gravel extraction. According to Defendant, private citizens in Portage Township (not parties here) filed a similar lawsuit. The court consolidated the cases (Houghton County Circuit Court Case No. 10-14635-CE) and entertained cross-motions for summary dispositions by all parties in February 2011. Following the hearing, the court ruled from the bench on February 14, 2011, that it agreed with the Township and the citizens regarding the allegations of their complaints, but that further briefing was needed on a state law issue of exclusionary zoning. On April 6, 2011, the Houghton County Circuit Court granted summary disposition "in favor of the Plaintiff Residents and The Township against Defendant Moyle. "Defendant Moyle will be enjoined to cease and desist its operation of Valley View Quarry in Section 15, (and other areas zoned Rural-Residential) of Portage Township."

-4-

(Plaintiffs' Motion, Docket #5-3, Exhibit #12, at 11.)  On May 10, 2011, the Houghton County Circuit Court denied Moyle's motion for reconsideration and entered an Order finding that VVQ's use constituted a nuisance and ordered closure of the mine.  Following entry of that Order, VVQ and Moyle filed "Claims of Appeals" in the Michigan Court of Appeals, and also filed an "Application for Leave to Appeal."  The Michigan Court of Appeals has not yet acted on either the Claims of Appeals or the Application for Leave to Appeal.

The issuance of preliminary injunctive relief is committed to the discretion of the district court.  *Planned Parenthood Association v. City of Cincinnati*, 822 F.2d 1390, 1393 (6th Cir. 1987).  In exercising that discretion, the court must consider and balance four factors:

> 1.  Whether the movant has shown a strong or substantial likelihood or probability of success on the merits.
>
> 2.  Whether the movant has shown irreparable injury.
>
> 3.  Whether the preliminary injunction could harm third parties.
>
> 4.   Whether the public interest would be served by issuing a preliminary injunction.

*Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994).  These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be carefully balanced by the district court in exercising its equitable powers.  *Id.*

Plaintiffs assert a takings claim under the Fifth Amendment's Just Compensation Clause. Defendant alleges that this litigation should be dismissed for lack of subject matter jurisdiction, arguing that Plaintiffs' takings claim is not ripe by virtue of Plaintiffs' failure to exhaust state-court remedies, as required by *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 105 S.Ct. 3108 (1985). ( Doc #13, Portage Township's Amended Brief at 8). The Court agrees.

"Article III of the Constitution limits the jurisdiction of federal courts to consideration of actual cases and controversies, and federal courts are not permitted to render advisory opinions." *Arnett v. Myers*, 281 F.3d 552, 562 (6th Cir. 2002) (internal citation omitted). Therefore, a case not yet ripe for adjudication must be dismissed for lack of jurisdiction. *Id*. (internal quotation and citation omitted); *Bigelow v. Mich. Dep't of Natural Res*., 970 F.2d 154, 157 (6th Cir. 1992).

As to takings claims, the United States Supreme Court held that "[t]he Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Williamson County*, 473 U.S. at 194, 105 S.Ct. 3108 (1985). Thus, even after a taking, the government has not violated the Constitution until it refuses to compensate the owner. *Id*. at 194-95 & n. 13, 105 S.Ct. 3108. *Williamson County* established a two prong standard to determine if a takings claim was ripe. First, "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Id*. at 186, 105 S.Ct. 3108. Second, a takings claim is not ripe until the property owner seeks "compensation through the procedures the State has provided for doing so." *Id*. at 194 (quoting *JGA Dev., LLC v. Charter Twp. of Fenton*, No. 05-70984, 2006 WL 618881, at *4 (E.D.Mich. Mar.9, 2006)). Under this reasoning, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Id*. at 195. The Michigan Constitution provides an inverse condemnation remedy for all property owners whose property is taken for public use. Mich. Const. Art 10, § 2. The Sixth Circuit has squarely held that Michigan law provides an adequate remedy for landowners alleging a regulatory takings claim. *See Seguin v. City*

*of Sterling Heights*, 968 F.2d 584, 588 (6th Cir. 1992); *Macene v. MJW, Inc.*, 951 F.2d 700, 704 (6th Cir. 1991).

Defendant argues that Plaintiffs have not utilized Michigan's procedures for seeking compensation for the alleged taking. Therefore, Plaintiff has not met the *Williamson County* standard, and their takings claim is not ripe. In response, Plaintiffs argue that the first prong of the *Williamson County* standard has been met because the actions of the Michigan trial court in its construction and application of *Kyser* to preclude Plaintiffs' use of the property without just compensation amount to "the simple device of asserting retroactively that the property it has taken never existed at all." *Hughes v. Washington*, 389 U.S. 290, 296-97 (1967). (Plaintiffs' Reply, Docket #14, at 6). Although they have filed a claim of appeal and an application for leave to appeal in the Michigan Court of Appeals, Plaintiffs argue that every claim brought before this Court, relating to Defendant, has been resolved by the trial court and the pending issue in the Michigan Court of Appeals, regarding the merits of a private nuisance, is unrelated to Defendant here. (Plaintiffs' Reply, Docket #14, at 7). Thus, Plaintiff argues that the final decision prong has been met. There is no evidence in the record to show that Plaintiffs have ever sought compensation in any state court. Plaintiffs admitted that they never sought a remedy on the merits in state court. Thus, Plaintiffs have not yet availed themselves of avenues available for compensation under Michigan law. Plaintiffs argue that because the state court nullified their right to use the property that existed prior to *Kyser*, any further attempt to seek relief in the state court would be fruitless. (Plaintiffs' Reply, Docket #14, at 7).

In this case, the Court need not consider whether a final decision has been made regarding the property sufficient to satisfy the first part of the *Williamson County* test, because the second part, utilization of state compensation procedures, has clearly not been met. *See JGA*, 2006

WL 618881, at *4. The Sixth Circuit requires Michigan plaintiffs to pursue a state inverse condemnation action to satisfy the ripeness requirement. *See Seguin*, 968 F.2d at 588 ; *Bigelow v. Michigan Dep't of Natural Resources*, 970 F.2d 154, 158 (6th Cir. 1992). Since Plaintiffs have not pursued an inverse condemnation action in the Michigan state court, their takings claim is not ripe for adjudication in this Court, and therefore should be dismissed without prejudice.

Alternatively, Defendant seeks dismissal of Plaintiffs' claims on the basis of the *Younger* abstention.[1] "In *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court held that considerations of comity, equity and federalism require a federal court to abstain from enjoining pending state criminal prosecutions in the absence of extraordinary circumstances." *Lake v. Granholm*, No. 1:07-cv-572, 2008 WL 724162, at *6 (W.D. Mich. March 17, 2008). It reflects a strong policy against federal intervention into state proceedings "in the absence of great and immediate irreparable injury to the federal plaintiff." *Younger*, 401 U.S. at 44; *see also, Fieger v. Cox,* 524 F.3d 770, 774 (6th Cir. 2008). The so-called "*Younger* abstention" was later extended to civil proceedings in state court. *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95

---

[1] There was a suggestion at oral argument that this Court may lack subject matter jurisdiction under the *Rooker-Feldman* doctrine. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In the Sixth Circuit:

> We have followed the Supreme Court's guidance, and we apply the *Rooker-Feldman* doctrine "only when a plaintiff complains of injury from the state court judgment itself." *Coles v. Granville*, 448 F.3d 853, 858 (6th Cir. 2006). In other words, the *Rooker-Feldman* doctrine applies "when a plaintiff asserts before a federal district court that a state court judgment itself was unconstitutional or in violation of federal law." *McCormick*, 551 F.3d at 395.

*Sturgis v. Hayes*. 283 Fed. Appx. 309, 313 (6th Cir. 2008). *Rooker-Feldman* prohibits this Court from exercising appellate jurisdiction to reverse or modify a state court judgment. Because there is no state court final judgment being attacked here, and because the state court proceedings are still pending, *Rooker-Feldman* is inapplicable.

S.Ct. 1200 (1975); *see also, Fieger*, 524 F.3d at 774 (Although the *Younger* principle was initially applied to state criminal proceedings, the Supreme Court has since extended the reach of the doctrine fully to "civil proceedings in which important state interests are involved."). The Sixth Circuit has held that the *Younger* abstention is appropriate "when the state proceeding (1) is currently pending, (2) involves an important state interest, and (3) affords the plaintiff an adequate opportunity to raise constitutional claims." *Coles v. Granville*, 448 F.3d 853, 865 (6th Cir. 2006); *Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1074 (6th Cir. 1998). A district court deciding to abstain under *Younger* has the option of either dismissing the case without prejudice or holding the case in abeyance." *Eidson v. State of Tennessee Dept. of Children's Services*, 510 F.3d 631, 638 (6th Cir. 2007) (quoting *Coles*, 448 F.3d at 866).

In the instant case, the Court concludes that all of the *Younger* factors exist here to prevent its intervention into the proceedings before the state court. As to the first element in the *Younger* analysis, "if a state proceeding is pending at the time the action is filed in federal court, the first criteria for *Younger* abstention is satisfied." *Federal Express Corp. v. Tennessee Pub. Serv. Comm'n*, 925 F.2d 962, 969 (6th Cir. 1991). There is an ongoing judicial proceeding in a state court. Plaintiffs' case is pending in the Michigan Court of Appeals and involves the same property and sufficiently similar facts as the case at bar regarding Defendant preventing Plaintiffs' operation in Section 15 due to Plaintiffs' non-compliance with the Township's ordinance. *See Gherghel v. Canton Twp.*, No. 10-cv-12065, 2011 WL 1982921 (E.D. Mich. May 20, 2011) (the first requirement of the *Younger* abstention is met because the pending state action is sufficiently similar to the federal action. Thus, this action meets the first element required for the *Younger* abstention.

The second step in the *Younger* analysis requires that the state proceedings involve an important state interest. Plaintiffs argue that abstention should not apply here because the case

-9-

is about a question of "the newness of a judicial taking claim, the federal court has an important interest in coherently and consistently determining the scope and theory of this type of claim." (Plaintiffs' Reply, Docket #14, at 17). However, the Sixth Circuit has held that there is clearly an important state interest in vindicating an important state policy of enforcing property rights. *See., e.g.*, *Carroll*, 139 F.3d at 1075 (finding that state proceedings "involve the state's important interest in enforcing its state and local housing codes"); *Cmty. Treatment Centers, Inc. v. City of Westland*, 970 F.Supp. 1197, 1223-24 (E.D.Mich.1997) ("It is well-established that for abstention purposes, the enforcement and application of zoning ordinances and land-use regulations is an important state and local interest."). Plaintiffs do not contend otherwise. Therefore, the second element of the *Younger* abstention is met here.

The third requirement of *Younger* is that Plaintiffs must have an opportunity to assert their constitutional challenges in the state court proceeding. In this case, Plaintiffs argue that the *Younger* abstention should not apply because Plaintiffs "would not have the 'full and fair' opportunity to litigate [their] constitutional claims in the course of a state proceeding that 'took' its property." (Plaintiffs' Reply, Docket #14, at 17). However, the "pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims . . . ." *Moore v. Sims*, 442 U.S. 415, 430 (1979). "A federal plaintiff arguing that he had an inadequate opportunity to raise constitutional claims in state court has the burden to show that state procedural law barred presentation of [its] claims." *Tesmer v. Granholm*, 333 F.3d 683, 690 (6th Cir. 2003) (en banc), *rev'd on* other grounds, 543 U.S. 125, S.Ct. 564 (2004) (citation and internal quotation marks omitted). Only if the authority "clearly shows" that state law barred the presentation of the constitutional claims in state court is abstention under *Younger* unwarranted. *Id*. "State courts normally have concurrent jurisdiction of federal issues unless such jurisdiction is withdrawn by

federal statute." *CSXT, Inc. v. Pitz*, 883 F.2d 468, 472 (6th Cir. 1989). Here, there has been no showing that the claims pursued by Plaintiffs in their federal lawsuit are barred in the state action. Thus, the third requirement of *Younger* is satisfied. As such, the Court finds that the three prongs of the *Younger* abstention doctrine are met and therefore this Court should refrain from exercising jurisdiction over this case.

> Having determined that the three requirements for *Younger* abstention are met in a given case, this Court will normally order a district court to dismiss a complaint unless the plaintiff can show that one of the exceptions to *Younger* applies, such as bad faith, harassment, or flagrant unconstitutionality. *See Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911 (1977).

*Fieger v. Thomas*, 74 F.3d 740, 750 (6th Cir. 1996). The Court is not aware of any of these circumstances existing in this case. Moreover, the Sixth Circuit has held that:

> A district court deciding to abstain under *Younger* has the option of either dismissing the case without prejudice or holding the case in abeyance. *See Carroll*, 139 F.3d at 1075. In exercising this discretion, a district court should look to the nature of the state proceedings and consider whether a litigant will be able to address his federal claim on the merits in the state court proceeding. *Id*. The court should also consider whether there are any statute of limitations issues should the case be dismissed and the limitations clock continues to run. *Id*.

*Coles*, 448 F.3d at 86.

In this case, Plaintiffs have not sought compensation in any state court and, therefore, they have not yet been denied compensation. Plaintiffs' cause of action for unconstitutional takings is not yet ripe for federal review. Consequently, the statute of limitations has not begun to run. *Coles*, 448 F.3d at 866 (A statute of limitations does not begin to run until a cause of action has accrued.). Based on the foregoing, given Plaintiffs' opportunities to raise their constitutional

challenges in the ongoing state court proceedings, it is recommended that the Court dismiss Plaintiffs' federal claims without prejudice.

Should this Court retain the case, injunctive relief is not warranted. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council*, 505 U.S. 7, 129 S.Ct. 365, 376 (2008). It should be granted "only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). To establish a likelihood of success on the merits, a plaintiff must show more than a mere possibility of success. *Mason County Med. Ass'n v. Knebel*, 563 F.2d 256, 261 n. 4 (6th Cir. 1977). The plaintiff must show a "strong" or "substantial" likelihood of success. *Summit County Democratic Central and Executive Committee v. Blackwell*, 388 F.3d 547, 550 (6th Cir. 2004). "Although it is possible that the plaintiffs will succeed on the merits, it is not likely. " *Id.* at 551. "Both parties have a possibility of success, but that is not enough to satisfy Plaintiffs' obligation to show a substantial likelihood of success." *Adams v. City of Marshall*, No. 4:05-cv-62, 2006 WL 2095334 (W.D. Mich., July 27, 2006).

In this case, Plaintiffs, in assuming that the Township Board should have approved Plaintiffs' quarry operation absent the decision in *Kyser*, argue that Plaintiffs' right to use their property as a quarry was lawful under *Silva*. (Plaintiffs' Motion, Docket #3, at 14). Relying on *Stop the Beach Renourishment, Inc. v. Florida Department of Environmental Protection*, 130 S. Ct. 2592 (2010), where the plurality held that the Takings Clause applies to the judiciary, *id.* at 2601, Plaintiffs argue that their Fifth Amendment rights were violated because the trial court, in its construction and application of *Kyser*, preclude Plaintiffs' extraction of gravel and other aggregate. (Plaintiffs' Motion, Docket #3, at 15.) Defendant counters that (1) Plaintiffs have no constitutionally protected property right because Plaintiffs have never challenged the finding that when Plaintiffs

purchased the property they were aware that the property was zoned rural residential and did not allow for mining operations, *Cf. Braun v. Ann Arbor Township*, 519 F.3d 564 (6th Cir. 2008), and (2) Plaintiffs' reliance on representations of individual Township Board Members, in particular past supervisor Bill Bingham to believe that they had the right to conduct mining operations in residential zones cannot stand, because the Michigan Zoning Enabling Act provides that decisions regarding zoning are to be made by the Board, not an individual. MCL 125. 3202. (Defendant's Opposition, Docket #13, at 14).

It is well established, and was reaffirmed in *Stop the Beach*, that "the Takings Clause of the Fifth Amendment bars the State from taking private property without paying for it." *Stop the Beach*, 130 S. Ct. at 2602. As noted above, Plaintiffs' takings claim is not yet ripe since they have not been denied just compensation. Second, Plaintiffs allege that Defendant's former Township Supervisor and Zoning Administrator expressly allowed Plaintiffs' operation and would have acquired the property right under *Silva*. (Plaintiffs' Motion, Docket #3, at 23). However the Michigan State court never found any evidence that Defendant's former Supervisor ever gave Plaintiffs formal approval. (Plaintiffs' Motion, Docket #5-3, Exhibit #12, at 10). Plaintiffs have failed to proffer any evidence which would show that the Township Board would have approved their use of the property for gravel extraction. At best, Plaintiffs can establish the possibility of success, which is not enough to show a "substantial" likelihood of success. *See Adams,* 2006 WL 2095334.

Turning to Plaintiffs' argument regarding the different outcome of their property right under *Silva* and *Kyser*, the Michigan trial court held that:

> *Silva* did not grant substantive legal rights to defendants [VVQ and Moyle], and *Kyser* did not remove such substantive legal rights. Rather, the 'sea change' rendered last summer by the *Kyser* decision was essentially with regard to which

> party bears the burden of proof. *Kyser* simply, albeit importantly, changes the
> analytical approach to the concept of Due Process "reasonableness" with regard
> to extraction of natural resources. The *Kyser* court directly held that Silva is not
> a constitutional requirement. 486 Mich at 517.

(Docket #12-2, Exhibit Q, at 3).

Plaintiffs argue that they had a protected property interest. Property interests are not defined by the Constitution. *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Rather, they are created and defined by "existing rules or understandings that stem from an independent source such as state law." *Id*. This principle also was affirmed in *Stop the Beach. Stop the Beach,* 130 S.Ct. at 2597. As recognized by the Sixth Circuit and this Court, "'[in] applying state law, we anticipate how the relevant state's highest court would rule in the case and are bound by controlling decisions of that court." *Appalachian Railcar Servs. v. Boatright Enters.*, Inc., 602 F.Supp.2d 829, 846 (W.D.Mich., 2008) (quoting *NUFIC of Pittsburgh v. Alticor, Inc*., 472 F.3d 436, 438 (6th Cir. 2007). "Michigan courts, in turn, are not bound by the Sixth Circuit's interpretation of Michigan law." *Pack v. Damon Corp*., No. 03-cv-73601, 2006 WL 1156489, at * 1 (E.D. Mich. May 1, 2006). Therefore this Court has no final say on what state law means. *See Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 472 (6th Cir. 2008). Accordingly, Plaintiffs have failed to establish a likelihood of success on the merits.

As to the second factor, Plaintiffs have the burden to show that the "harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." *See Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 578 (6th Cir.2 002); *Abney v. Amgen, Inc*., 443 F.3d 540, 552 (6th Cir. 2006). Plaintiffs argue that a preliminary injunction is proper because they have no adequate remedy, reasoning that "denying Plaintiffs the ability to use their land on their own property constitutes clear irreparable injury." (Plaintiffs' Motion, Docket #3,

at 25). Defendant counters that Plaintiffs will suffer no irreparable harm if this motion is denied because Plaintiffs make no efforts to indicate why they cannot use their property for any of the other permitted uses. (Defendant's Opposition, Docket #13, at 19). Defendant further maintains that Plaintiffs in fact agree that residential use is indeed a potential use of the property. *Id*. Plaintiffs have not carried the burden to show that they are likely to suffer irreparable harm that cannot be undone through monetary remedies. The failure to show irreparable harm, by itself, can justify the denial of preliminary injunctive relief without consideration of the other three factors. *See Hacker v. Federal BOP*, No. 06-12425-BC, 2006 WL 2559792, *8 (E.D.Mich. Sept. 1, 2006).

"In considering this factor, the Court must (1) balance the harm Plaintiffs would suffer if their request for a preliminary injunction were denied against the harm Defendant would suffer if an injunction were to issue, and (2) assess the impact the preliminary injunction might have on relevant third parties." *Trenton Corp. v. Superior Corrosion Control, Inc.*, No. 06-15699, 2007 WL 268792, at *6 (E.D.Mich. Jan. 25, 2007). Plaintiffs allege that the harm to them involves the most fundamental of constitutional rights and this injunction will have no effect on the Township's authority with respect to all other landowners and all other parcels of land in the community. (Plaintiffs' Motion, Docket #3, at 26). Defendant argues that the balance of harms favors the Township because Plaintiffs' operation of the mine was significantly and adversely impacting other citizens in the community. (Defendant's Opposition, Docket #13, at 26). Plaintiffs have failed to present any convincing evidence to support their argument. Further, Defendant's showing of the adverse effect on the citizens in the community tips the balance of hardships in favor of denying injunctive relief.

Plaintiffs argue that the public interest is in favor of granting the injunction because gravel supports construction and many job opportunities in the area. (Plaintiffs' Motion, Docket #3,

at 26). Defendant counters that there is no record of support for Plaintiffs' statements and abatement of nuisance is in the public's interest. (Defendant's Opposition, Docket #13, at 27). Plaintiffs have not presented compelling evidence that the injunction would serve the public interest.

Because this case is not ripe for review, I recommend that the case be dismissed without prejudice. In the alternative, if this Court does not dismiss the case, I recommend that Plaintiffs' Motion for Temporary Restraining Order, or in the Alternative, Show Cause Order and Request for Preliminary Injunction (Docket #3) be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of your receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR. 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal of those issues or claims addressed or resolved as a result of the Report and Recommendation. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

       /s/ Timothy P. Greeley  
       TIMOTHY P. GREELEY  
       UNITED STATES MAGISTRATE JUDGE

Dated: July 22, 2011